* "Reporter of Decisions' note: The court's denial of rehearing was reported under the style Daniel Sutley and Mildred Bombailey Sutley v.State."
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 43 
Mildred Bombailey and Daniel Sutley were indicted for willful abuse of a child under 18 years of age, in violation of §26-15-3, Code of Alabama 1975. Bombailey was also indicted for failure to report child abuse, in violation of § 26-14-3, Code of Alabama 1975. The appellants were jointly tried, and the jury found Sutley guilty of assault in the third degree and found Bombailey guilty of aiding and abetting assault in the third degree. Sutley was sentenced to 12 months in the county jail, split to 180 days in the county jail and 2 years' probation. Bombailey was sentenced to 12 months in the county jail, split to 60 days in the county jail and 2 years' probation. Both appellants were fined $2,000. Each of the appellants raise different issues on appeal. The issues raised by Bombailey will be addressed in Section A of this opinion, and the issues raised by Sutley will be addressed in Section B.
The victim in this case, Bombailey's son, testified that he was nine years old at the time of trial and eight years old on October 23, 1987. On that day, the victim brought home a note from his teacher. After reading this note, Sutley, who was living with Bombailey at the time, hit the victim on the back and neck and legs with a belt. Sutley continued to hit him after the victim asked him to stop and when the victim tried to pull away. Sutley also hit the victim on the lip with his fist. Bombailey was present when the spanking occurred. After the appellant spanked the victim, he made the victim stand in the corner. Later that day, the victim was taken to the hospital for treatment for the injuries sustained in the beating.
Angela Pope testified that on October 23, 1987, she lived at Valleydale Trailer Park in Pelham. That afternoon, Pope heard screams coming from the trailer in which the appellants lived. She heard a man's voice screaming "shut up" and a child's voice saying "stop it" and "help." Pope called the Pelham Police Department and reported that she suspected that the appellants were abusing a child.
Officer Scott Tucker of the Pelham Police Department went to the appellants' trailer in response to Pope's call. When he knocked on the door, Sutley opened the door. Tucker saw the victim standing in the corner, and he asked Sutley if he could speak to the victim. The victim seemed *Page 44 
upset at the time, but he was not crying. Tucker noticed a swelling of the victim's lip, and he called the paramedics. When Tucker asked Sutley what had happened, Sutley said that the victim was being punished. Sutley also stated that he did not punish the child unless Bombailey was present.
Paramedics Sam Douglas and Joey Nelson responded to the call. They testified that when they arrived, the victim seemed upset and scared. They noticed that the victim had a swollen lip and that he had old and new bruises all over his body. Douglas and Nelson stated that the victim's bruises were consistent with having been hit hard with a belt. They then transported the victim to the Shelby County Medical Center.
Elisa Pineheart, an emergency room nurse at the Shelby County Medical Center, stated that she attended to the victim on the date in question. She testified that the victim had old and new bruises on his body which were "linear in nature." At some point that evening, Sutley entered the victim's room and the victim drew up into a fetal position. Pineheart noticed that Sutley was wearing a belt with a big metal buckle.
Dr. William Phillip Smith testified that he examined the victim on the day in question. Smith stated that he found "parallel bruising" to the victim's neck, back, buttocks, and lower extremities and that the bruises were at different stages of development. Some of the bruises were as old as 10 days and some were recent. The parallel bruising suggested being hit with a belt, and the lip injury suggested a blunt blow with a blunt object.
 A I
Bombailey contends that a mistrial should have been granted in this case because one of the jurors was observed talking to a third person. She asserts that the trial court should have interrogated this juror to determine whether she and this third person were discussing the case. It appears from the record that this third person was the juror's husband, who happened to be a member of the jury venire.
 "This court in Woods v. State, Ala.Cr.App., 367 So.2d 974, 980, reversed on other grounds, Ala. 367 So.2d 982 (1978), stated:
 " '[T]he granting of a mistrial in cases of private communications between jurors and third persons is largely within the discretion of the trial judge, and his decision is subject to reversal only where that discretion has been abused. Tillman v. United States, 406 F.2d 930
(5th Cir. 1969); Green v. State, 252 Ala. 513, 41 So.2d 566 (1949).
 " 'This discretion of the trial court to grant a mistrial includes the discretion to determine the extent and type of investigation requisite to a ruling on the motion. United States v. Flynn, 216 F.2d 354, 372 (2nd Cir. 1954); Lewis v. United States, 295 F. 441 (1st Cir. 1924); Tillman, supra; Killilea v. United States, 287 F.2d 212 (1st Cir. 1961); United States v. Khoury, 539 F.2d 441 (5th Cir. 1976). A full evidentiary hearing at which witnesses and jurors can be examined and cross examined is not required. Tillman, supra, 406 F.2d at 938. . . .' "
Cox v. State, 394 So.2d 103, 105 (Ala.Crim.App. 1981).
In addressing this matter at trial, the court stated:
 "BY THE COURT: What was observed? Tell me what was observed more than a juror talking to another person who was on the venire. It was represented to me that her husband was here listening to testimony when I inquired. Everybody knew he was on the venire. I inquired and he said no I was a member of the venire. They will strike a jury next door and he was here listening to testimony. Why should I bring her out and subject her to something based upon conjecture? I could take every juror and every time they speak to someone and ask him if they were talking about the case. And I don't plan to do that." (R. 340-41.) *Page 45 
In light of the above colloquy, we do not find that the trial judge abused his discretion under these particular facts.See also Flanagan v. State, 533 So.2d 637 (Ala.Crim.App.),writ. quashed (Ala. 1987).
 II
During the appellants' trial, portions of Sutley's testimony at a dependency hearing concerning the victim were read from the transcripts of that hearing. Bombailey argues on appeal that admitting this testimony was error because, she argues, those proceedings were confidential. She further alleges that because this evidence was admitted, her right against self-incrimination was violated because she was forced to testify at this trial to clarify portions of the transcript of the dependency hearing. Although the appellants raised numerous objections to the admission of this evidence at trial, the specific objections now raised on appeal were not brought to the attention of the trial court. Thus, there is nothing before this court to review. Lokos v. State, 434 So.2d 818
(Ala.Crim.App. 1982), aff'd, 434 So.2d 831 (Ala. 1983). Furthermore, we find that there is no merit to Bombailey's assertions. The confidentiality rules which govern juvenile proceedings and records and which are set out in § 12-15-65, § 12-15-72(b), § 12-15-100, and § 12-15-101, Code of Alabama 1975, and Rules 18 and 19, A.R.J.P., are designed to protect the juveniles in juvenile proceedings, not the witnesses. Furthermore, we fail to see how the introduction of this testimony "forced" Bombailey to testify at this trial; the transcript of the testimony from the dependency hearing was Sutley's testimony, not Bombailey's.
 III
Bombailey contends that the State failed to establish a proper chain of custody with respect to the tapes of the juvenile hearing and the transcript of those tapes.
Sharon Cooper, an employee of the Shelby County clerk's office, testified that she tape-recorded the hearings in the matter of [the victim], Mildred Bombailey Sutley, mother v. Department of Human Resources. After the hearing, Cooper put the tapes in a safe in the clerk's office, where they remained until she gave the tapes to Judy McKleroy, another employee of the clerk's office.
McKleroy testified that she was appointed to prepare the transcript of the hearing in the above matter. She stated that she prepared the transcript by listening to tapes of the hearing given to her by Cooper. She then certified the transcript and filed it with the Court of Civil Appeals. McKleroy testified that the transcript fairly and accurately reflected what was on the tapes. The tapes were always in her custody until she finished transcribing them and returned them to Cooper.
Bombailey contends that a proper chain of custody was not established because the safe in the clerk's office, in which the tapes were kept when they were not in McKleroy's possession, was left unlocked during the day.
"The State need only prove to a reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.Sommer v. State, 489 So.2d 643, 645 (Ala.Cr.App. 1986)." McCrayv. State, 548 So.2d 573, 576 (Ala.Crim.App. 1988). "The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence."Slaughter v. State, 411 So.2d 819, 822 (Ala.Crim.App. 1981),cert. denied (Ala. 1982). We find that the State established a proper chain of custody.
Bombailey also contends that the admission of the transcript into evidence was in violation of the best evidence rule. "Certified copies of public records, signed and certified by the officer who has lawful custody, are properly authenticated and admissible into evidence." Bentley v. State, 450 So.2d 197,199 (Ala.Crim.App. 1984). See also Ala. Code, § 12-21-35
(1975); Lokos; Norton v. State, 502 So.2d 393 (Ala.Crim.App. 1987). This is one of the exceptions to the best evidence rule.See generally C. Gamble, McElroy's Alabama Evidence, § 218.01, 218.02, 269.01 (3rd ed. 1977). Thus, the tapes and the transcript *Page 46 
of the dependency hearing were properly admitted into evidence.
 IV
Bombailey asserts that photographs taken of the victim's injuries at the emergency room should not have been admitted into evidence. Photographs are admissible in a prosecution if they are relevant to show the nature and location of injuries inflicted on the victim by the accused. See McElroy's at § 207.01(2); Peterson v. State, 350 So.2d 771 (Ala.Crim.App. 1977); Brown v. State, 331 So.2d 820 (Ala.Crim.App. 1976). The fact that the photographs were in color and were enlarged is of no particular significance as long as there was no distortion of the depiction of the injuries. McElroy's, § 207.01(2); Harris v. Snider, 223 Ala. 94, 134 So. 807 (1931);Braswell v. State, 51 Ala. App. 698, 288 So.2d 757 (1974). The nurse and the doctor who attended the victim at the emergency room testified that, if anything, the injuries looked worse in actuality than the photographs showed. The police officer who took the photographs laid a proper predicate for the admission of these photographs, and the appellants had ample opportunity to question this officer about the photographs. These photographs were properly admitted into evidence.
 B I
Sutley contends that the admission into evidence of the transcript of his testimony at the dependency hearing violated his privilege against self-incrimination. It appears from the record that Sutley voluntarily testified at the dependency hearing, and there is no indication that he asserted his Fifth Amendment privilege against self-incrimination at that hearing. In Cantrell v. State, 353 So.2d 80 (Ala.Crim.App. 1977), this court stated that it is
 "the general rule that a defendant who voluntarily takes the witness stand in his own behalf and testifies without asserting his privilege against self incrimination waives the privilege as to the testimony given and such testimony may be used against the defendant in a subsequent trial for the same offense even if he does not take the stand at the second trial."
Cantrell, 353 So.2d at 82.
This is true "even if, as a practical matter, the defendant must take the stand to contradict [his] earlier statements." Project, Eighteenth Annual Review of Criminal Procedure: UnitedStates Supreme Court and Courts of Appeal 1987-88, 77 Geo.L.J. 699, 1047 (1989).
Thus, Sutley waived his privilege against self-incrimination by voluntarily testifying at the dependency hearing and not asserting that privilege. There is no merit to this issue.
 II
This issue was addressed in Part A-IV of this opinion.
 III
Sutley contends that his right of confrontation and cross-examination was violated due to the victim's and nurse Pineheart's inability to remember certain details. InDelaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292,88 L.Ed.2d 15 (1985), the United States Supreme Court stated:
 "This Court's Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination. The first category reflects the Court's longstanding recognition that the 'literal right to "confront" the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause.' California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). Cases such as Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), gave rise to Confrontation Clause issues 'because hearsay evidence was admitted as substantive evidence against *Page 47 
the defendants.' Tennessee v. Street, 471 U.S. 409, 413, 105 S.Ct. 2078, 2081, 85 L.Ed.2d 425 (1985). Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
 "The second category of cases is exemplified by Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), in which, although some cross-examination of a prosecution witness was allowed, the court did not permit defense counsel to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' As the Court stated in Davis, supra, at 315, 94 S.Ct., at 1110,
 '[c]onfrontation means more than being allowed to confront the witness physically.' Consequently, in Davis, as in other cases involving trial court restrictions on the scope of cross-examination, the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . emasculate the right of cross-examination itself.' Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956
(1968)."
Fensterer, 474 U.S., at 18-19, 106 S.Ct., at 294.
Obviously, this case does not fall under the first category as there is no assertion that the State admitted any out-of-court statements made by the victim or by nurse Pineheart. Further, this case does not fit into the second category because the trial judge did not limit the appellants' cross-examination of either one of these two witnesses.
 "The [Supreme] Court has recognized that 'the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [also] . . . allowed to impeach, i.e., discredit the witness.' Davis, 415 U.S., at 316, 94 S.Ct., at 1110. But it does not follow that the right to cross-examine is denied by the State whenever the witness' lapse of memory impedes one method of discrediting him. . ..
 ' "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." ' Id., at 315-316, 94 S.Ct., at 1109-10 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940) (emphasis in original)). Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish.
 ". . . The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."
Fensterer, 474 U.S., at 19-22, 106 S.Ct., at 294-95.
Here, the appellants were given a full and fair opportunity to cross-examine the victim and nurse Pineheart. Thus, we find there was no Confrontation Clause violation due to these witnesses' lack of memory.
 IV
During the direct examination of Sutley, the following occurred:
"Q. What, if anything, did you direct him to do?
 "A. I told him to get back over on the arm of the sofa so I could finish giving him the spanking.
"Q. Did he obey you?
"A. No, sir, he told me he wouldn't do it.
"Q. What, if anything, did you do at that time?
 "A. I didn't know what to do. I was in a situation where I knew if I didn't do something, we had —
"MR. CAMPBELL: I object to the narrative answer. *Page 48 
"BY THE COURT: Sustained.
 "Q. Can you tell the members of the Jury what your undisclosed mental operation at that time why you were going to bend back over?
 "MR. CAMPBELL: I object to that question, Your Honor. It's not relevant and it's not material as to his undisclosed mental operation of what he thought.
"BY THE COURT: Sustained.
 "MR. JONES: Judge, we would proffer that his answer would be going to the material issue in the case as to how he was administering punishment and under what circumstances and to whether or not he was acting reasonably under those circumstances.
 "BY THE COURT: Court has sustained the objection. You may ask another question." (R. 330-32.)
Sutley argues that the trial judge erred by sustaining the State's objection to defense counsel's question concerning Sutley's undisclosed mental operation. "The rule is that a witness may testify on direct examination to his intention, motive, or other physically unexpressed mental state, provided that the testimony is material to the issues in the case.Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974)." Flint v.State, 370 So.2d 332, 335 (Ala.Crim.App. 1979). See alsoMullins v. State, 359 So.2d 843 (Ala.Crim.App.), cert.denied, 359 So.2d 849 (Ala. 1978). "The materiality of the evidence offered by the holder of this uncommunicated intent is left within the discretion of the trial judge, and the admission or exclusion of such evidence shall not be reviewed upon appeal, except for an abuse of discretion." Mullins, 359 So.2d at 848.
We do not believe the trial judge abused his discretion by sustaining the State's objection. First of all, the question is extremely confusing. Sutley had been testifying that he had just told the victim to bend over the chair and then he was asked what his undisclosed mental operation was at the time that he (Sutley) was going to bend over. Furthermore, Sutley was able to fully explain how he administered punishment to the victim on this and other occasions, and he was allowed to testify that he did not intend to strike the victim in a willful and cruel manner. Thus, the trial court's decision in this matter was not error.
 V
It appears that at some point during the trial, Sutley attempted to introduce into evidence an alleged letter of apology from the victim to Sutley. The State objected, and the trial court, after examining this letter, refused to admit the letter into evidence stating that it was "irrelevant to the issues in this case." (R. 438.) " 'What is relevant is a matter ordinarily within the discretion of the trial court. Unless such discretion is abused, it will not be considered error on appeal.' " McNeely v. State, 524 So.2d 375, 381
(Ala.Crim.App. 1986), quoting Dawkins v. State, 455 So.2d 220, 222
(Ala.Crim.App. 1984). The trial judge was certainly in the best position to determine the relevancy of this letter. This is particularly true since neither the letter nor the contents of the letter are in the record. We find that the trial judge did not abuse his discretion in this matter.
 VI
During the State's cross-examination of one of Sutley's character witnesses, the following occurred:
 "Q. Mr. Toothaker, have you ever heard Mr. Sutley hit an 8-year-old child —
 "MR. JONES: I object. There's been no evidence offered as to peace and quiet. Improper impeachment of a character witness on truth and voracity (sic).
"BY THE COURT: Overruled, you may answer.
"A. Dan told me about the situation.
 "Q. So, you have heard that he hit an 8-year-old child?
"A. Dan told me about it.
 "Q. Did he tell you that he had hit the child with a belt?
"A. He described the punishment."
(R. 305.)
Sutley argues that the prosecutor's questions to this character witness were improper. *Page 49 
 "If a witness testifies to another's good general reputation as a whole for the purpose of supporting such other's credibility, the witness may be asked on cross-examination whether he has heard rumors derogatory of such other. This principle is applicable even though the misconduct or bad quality imputed to such other by the rumors is not relevant to the trait of truth and veracity. The witness may be asked, for example, whether he has heard that such other got drunk and gambled, shot a person, or was turned out of the church for living in adultery.
 "If a witness testifies to another's good general reputation only with respect to truth and veracity, the witness may be asked on cross-examination whether he has heard rumors derogatory to such other if, but only if, the rumors inquired about are relevant to the trait of truth and veracity. Thus, a witness who has testified only to another's good general reputation for truth and veracity may not be asked on cross-examination whether he has heard that such other had gotten drunk and played cards. This could not be asked on cross-examination because drunk and playing cards are without relevancy to one's character for truth and veracity."
C. Gamble, McElroy's Alabama Evidence, § 176.01(10) (3rd ed. 1977).
Here, the character witness only testified that Sutley had a good reputation for truth and veracity. Whether Sutley had hit a child is not relevant to the trait of truth and veracity, and thus, the prosecutor's question was improper. However, we do not believe that Sutley was prejudiced in this regard due to the witness's answers on this matter. The subject of the prosecutor's question was an undisputed fact. Sutley himself admitted this act, and the source of this witness' knowledge of this act came from Sutley himself. Furthermore, the act itself, the mere spanking of a child (as opposed to the abuse of a child by spanking), is not a "misdeed." See Wiggins v. State,513 So.2d 73, 78 (Ala.Crim.App.), cert. denied (Ala. 1987). Thus, we find that this error was harmless.
 VII
During the sentence hearing, the State asserted to the trial court that the victim had been hit with a belt buckle. Sutley contends on appeal that there was no evidence presented that he hit the victim with a belt buckle. First of all, no objection was made to this remark, and thus, there is nothing before us to review. Second, Sutley admitted that he hit the victim with the belt, see R. 371, 388, 390, although there was no specific reference to the belt buckle itself. There is no merit to this issue.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only.