**UNITED STATES of America, Plaintiff,**

v.

**Yahweh Ben YAHWEH, et al., Defendants.**

**No. 90–868–CR.**

United States District Court, S.D. Florida, Miami Division.

May 4, 1992.

Richard Scruggs, Gertrude Novicki, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Alcee L. Hastings, Patricia G. Williams, Miami, Fla., Paul McKenna, Coconut Grove, Fla., Richard Gagliano, Miami, Fla., Steven Kassner, Coral Gables, Fla., Albert Z. Levin, Dennis Kainen, Wendell Graham, Charles White, Miami, Fla., Michael Smith, Fort Lauderdale, Fla., Kathy Hamilton, Miami, Fla., Ellen Leesfield, Coconut Grove, Fla., Rayfield McGee, Curtis Jones, Thomas Buscaglia, Glenn Feldman, Chris Mancini, Miami, Fla., for defendants.

## ORDER

ROETTGER, Chief Judge.

Violent crime cases are the exception in federal courts. The instant case is arguably the most violent case ever tried in a federal court: the indictment charges the sixteen defendants on trial with 14 murders[1] by means such as beheading, stabbing, occasionally by pistol shots, plus severing of body parts such as ears to prove the worthiness of the killer. Plus, they are charged with arson of a slumbering neighborhood by molotov cocktails with the perpetrators under orders to wait outside the innocent victims' homes wearing ski masks and brandishing machetes to deter the victims from fleeing the flames.

In the course of the trial, the Government sought to introduce into evidence medical examiners' photographs of the victims. Defendants objected to the admission of these photographs into evidence on the grounds that the photographs were not relevant pursuant to Fed.R.Evid. 401 and prejudicial in effect pursuant to Fed. R.Evid. 403. Specifically, the Defendants contend that the size of the photographs, which are roughly 30 × 40 inches, were designed to inflame the passions of the jury.

The relevance of these photographs is without question. Photographs of homicide victims are relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime. *United States v. De Parias* 805 F.2d 1447 (11th Cir.1986). In addition to identifying the victims and the means of death, the photographs in this case corroborate the testimony of witnesses, Lloyd Clark, Ricardo Woodside and Robert Rozier, whose credibility is central to the government's case.

With reference to the beating of Aston Green, Lloyd Clark testified that he "saw somebody jump on his [Aston Green's] chest." (transcript p. 385). Further, Ricardo Woodside testified that there

**1.** An order filed on the first day of the trial, *United States v. Yahweh ben Yahweh et. al.,* 779 F.Supp. 1342 (So.D.Fla.1992) mandamus denied (11th Cir. January 10, 1992) lists 16 murders as being charged; however, the trial only covers 14 of the alleged murders.

were "people jumping up and down on his chest...." (transcript p. 1633). Government Exhibit 7 shows the outline of a footprint on the chest of Aston Green. Dr. Charles Wetli, the medical examiner who performed the autopsy on Aston Green, stated that this injury was consistent with someone jumping on the deceased's chest.

Ricardo Woodside testified concerning the decapitation of Aston Green. He estimated that he heard approximately fifteen to thirty "chops" as if a knife was coming down on flesh. He also heard the attention-riveting statement: "Damn. This blade is dull." (transcript p. 1642). This testimony at first seemed incredible. However, it was corroborated by Government Exhibit 9. This exhibit clearly shows that a number of "chops" were necessary for the decapitation.

· Prior to the admission of exhibits 7 & 9 in the enlarged size, this court reviewed the same photographs in the 8″ × 10″ size. The latter did not show the detail necessary to corroborate the witnesses' testimony. The footprint could not be seen clearly on the 8″ × 10″ of Exhibit 7 and the number of lacerations on the top of Aston Green's torso were not clearly visible on the 8″ × 10″ of Exhibit 9. Discussing the enlargements of Aston Green, Dr. Wetli testified, and the court concurs, that 8″ × 10″ photographs did not reveal the contusions on the deceased's face, the machete marks on the neck or the footprint on the chest. The enlarged photographs clearly show the footprint and that numerous "chops" were necessary for the decapitation.

■ Relevant evidence can be excluded pursuant to Fed.R.Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice...." The subject matter of the photographs in question—decapitation, slit throat, removed ears, repeated stabbing, and gun shot wounds—is both difficult to view as well as disturbing and distasteful. However, so

were the crimes alleged. Murder, particularly "murder most foul" by methods such as decapitation or stabbing and the removal of body parts, is inherently offensive. However, these exhibits are not flagrantly or deliberately gruesome depictions of the crimes.[2]

After careful review of the exhibits and the medical examiners' testimony and objections, the court found no distortion, exercised its discretion and overruled the objections.

In *United States v. McRae*, 593 F.2d 700 (5th Cir.1979), the Fifth Circuit held that:

Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.... It is not designed to permit the court to "even out" the weight of evidence, to mitigate a crime.... *id.* at 707.

Defendants argue that the gruesome or prejudicial effect of the photographs are heightened by the size of the photographs. The Eleventh Circuit cases dealing with photographs make no mention as to any value or prejudicial effect produced by the size of the photograph. In *United States v. Thompson* 744 F.2d 1065 (4th Cir.1984), a blown up black and white autopsy photograph of a four month old boy who died of meningitis complicated by malnutrition and starvation was admitted into evidence to illustrate the testimony of the medical examiner.

## TREATMENT BY STATE COURTS IN THE ELEVENTH CIRCUIT

As the offense of murder is usually the

---

**2.** The Court notes that the Government has made an effort to limit the introduction of gruesome evidence. Although permissible under *United States v. De Parias*, 805 F.2d 1447 (11th Cir.1986), the Government chose not to introduce the autopsy photographs of the decomposed body of Lyle Bellinger. The Government also represents that it has the severed ear of the victim, Raymond Kelly, but it was not offered. This is not to suggest that these would have been admissible if offered.

domain of state court[3], the issue of admission into evidence of enlarged photographs of murder victims has been addressed at greater length in state courts. Courts in Alabama, Florida, and Georgia[4] have permitted admission of blown up color photographs into evidence.

In *Bankhead v. State* 585 So.2d 112 (Ala. 1991), the Supreme Court of Alabama held that projection of color photographic slides on a large screen in front of the jury was permissible as this procedure did not distort the victim's wounds or mislead the jury. In *Bombailey v. State* 580 So.2d 41 (Ala.Crim.App.1990), the Court of Criminal Appeals of Alabama held that the fact that the photographs of a child abuse victim were in color and were enlarged is of no particular significance as long as there was no distortion of the depiction of the injuries.

In *Jones v. State* 249 Ga. 605, 293 S.E.2d 708 (1982), the Supreme Court of Georgia held that enlarged photographs are admissible in evidence provided there is no distortion or enlargement of the objects in the pictures. In *Wilson v. State* 245 Ga. 49, 262 S.E.2d 810 (1980), the Supreme Court of Georgia held that enlarged color photographs were admissible despite contentions that there was no issue as to how the person died or which wounds could have caused death.

In *Gopaul v. State* 536 So.2d 296 (Fla. App., 3d Dist.1988), the Court of Appeals held that enlarged colored photographs of an infant's pelvic area were relevant to the jury's understanding of the expert testimony concerning the victim's injury. In *Brown v. State* 532 So.2d 1326 (Fla.App., 3d Dist.1988), the Court of Appeals held that a color photograph of the crime scene, 2 feet by 3 feet in size, of the deceased lying on the bed where she was shot with large amounts of blood on the body, bed and floor was admissible despite the admission of the crime scene sketch.

This court adopted the procedure of examining each photograph by having the medical examiners explain the need for a photograph on the basis of contents and size. The photographs at issue here are not as gruesome as the crime scene photograph discussed in *Brown*. All the photographs in this case which were introduced by the government at the 30″ × 40″ size were autopsy photographs. Photographs of the victims at the scene of the crime were all in the 8″ × 10″ size. The photographs were very clinical in nature establishing the location and nature of the wounds. There was very little blood. Those which might be considered more offensive[5] were used by the medical examiner's pathologists for illustration of their testimony, but the court required the government to reduce those exhibits to 16″ × 20″ size which, after examination by the court, were admitted into evidence and will be the ones, with the other 300 plus exhibits, provided the jury for their deliberations. Dr. Wetli, who has testified in 250 murder cases at the state level and has seen and used blow ups of this size in state court, characterized their use as occasional but not rare.

Each medical examiner selected the photographs necessary to illustrate his or her testimony to the jury. Dr. Barnhart stated "[t]hey were ones which I think could be looked at by a lay person and one could understand location and nature of the wounds from the photographs." (transcript p. 4686). Defense counsel argued that an analytical chart could show specifically where injuries occurred and the extent of the injuries. In comparing the utility of an enlarged photograph as opposed to a chart, Dr. Wetli responded "[b]ecause the picture is much better than a diagram and my

---

3. Murder becomes a part of this cause as a racketeering act defined by 18 U.S.C. § 1961(1).

4. The Eleventh Circuit comprises these states.

5. These were Government Exhibit 6 (the decapitated head of Aston Green placed above the body—which, in this court's opinion, is fairly benign considering the decapitation and far more benign than a front picture of the headless torso would be), Government Exhibit 9 (back view of the headless torso of Aston Green), Government Exhibit 195 (severed throat of Clair Walters), and Government Exhibit 197 (side view of Clair Walters head from which ear had been removed).

words.... [It] just depicts exactly what it is, what is there.... If you want a jury to have a true understanding of what I saw and how it matches up, not just with those marks but other photographs as well as what I presume will be other evidence entered, therefore the complete picture that is going to be given, then the pictures are extremely helpful." (transcript p. 2220–2221). Further, he stated "diagrams will misstate the issue in that there is no blood and instruments and so forth; but the truth is the truth and the injuries are there." (transcript p. 2255). *Brown v. State, supra,* also rejects defendants' contentions about preemptive use of the charts only.

Dr. Rao also selected the photographs to illustrate her testimony. When questioned about the necessity of enlarged photographs and whether the same thing could be shown by an $8'' \times 10''$, Dr. Rao replied that a projector would be necessary. (transcript p. 6148). All the medical examiners' pictures were slides made into photographic exhibits. The court can take judicial notice that at a usual distance the image of slides (transparencies) projected onto a screen would be larger than the size of the $30'' \times 40''$ pictures used as an aid to the medical examiner's testimony. Accord, *Bankhead v. State* 585 So.2d 112 (Ala. 1991).

The court specifically instructed the jury that no weight should be given to the differing sizes of the photographs and cautioned the jury that some of the photographs might be disturbing. However, unlike the *Thompson* case where a juror informed the court that he could not be objective after viewing the enlarged autopsy photograph of the abused child, the jurors in this case have not expressed any such views. The court carefully observed the jurors and their reactions to the photographs. After the brief initial reaction to

seeing the first autopsy photograph—not intense, but apparently from recognition they would see photos of homicide victims—the jurors showed no signs of being disturbed by the exhibits.

Displaying an enlarged photograph while the medical examiner testified to facts illustrated in the photograph enabled all members of the jury simultaneously to follow the witness' testimony. Having seen many juries in trials struggle with a witness' presentation when $8'' \times 10''$ photographs are used, it is clearly easier for the jury to capture the substance of the testimony without straining to view the photograph.[6] For twenty years, this court has stood by the jury box to observe as witnesses testified in front of the jury box concerning exhibits being published to the jury there. In this court's view[7] the larger $30'' \times 40''$ pictures were the right size to illustrate and clarify the witness' testimony; in fact, even the $16'' \times 20''$ size was inadequately small by comparison.

The probative value of the enlarged autopsy photographs substantially outweighs the danger of unfair prejudice and therefore the objections to the photographs are overruled. Although enlargements may magnify certain wounds, they have by no means distorted the nature of the wounds in this case. This court has attempted to keep the photographs to about life-size. However, in certain instances larger blow ups have been permitted as necessary to illustrate the medical examiner's testimony, such as with reference to severed ears and a severed trachea and carotid artery. Even with an enlargement larger than life size, the court found the enlargement did not distort the subject. Additionally, arguments as to size cut both ways. Photographs many times smaller than life size do minimize the wounds inflicted, but, as was the case with the footprint in Exhibit 7,

---

6. For years this Court has urged lawyers to use photographic exhibits at least of an $11'' \times 14''$ or $16'' \times 20''$ size to assist a jury. This court is now persuaded photographs of a $30'' \times 40''$ size are preferable. A $3\frac{1}{2}'' \times 5''$ (3R size) or $4'' \times 6''$

(4R size) is grossly inadequate in nearly every instance.

7. The Court is fortunate to need only reading glasses.

may not accurately reflect injuries which were present.

DONE AND ORDERED.