COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CURTIS LEON COPELAND, | § | No. 08-12-00053-CR |
| Appellant, | § | Appeal from the |
| v. | § | 362nd Judicial District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2010-1387-D) |
| | § | |

## **O P I N I O N**

Curtis Leon Copeland appeals from the trial court's judgment convicting him of capital murder and sentencing him to life imprisonment. In three issues, Copeland argues the evidence is insufficient and the trial court violated his constitutional right to cross-examine and confront witnesses and erred in admitting prejudicial evidence. Concluding that the issues Copeland raises have no merit, we affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Copeland was charged with killing his girlfriend's three-year-old son, Jesse Fisher, Jr., "by grabbing, throwing, striking and slamming Jesse . . . with [his] hand . . . ." During one of his custodial interrogations, Copeland admitted to investigators that he grabbed Jesse, who was on Copeland's bed, and slammed him so "hard" to the floor that Jesse screamed, and in Copeland's

words, "draw[ed] up." Jesse's head struck the floor with such force that the resulting trauma to his brain caused his death.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Copeland challenges the sufficiency of the evidence sustaining his conviction. Copeland contends the evidence does not "show[] [that] [he] was alone with [Jesse] at the times the injuries occurred" and that he intended to cause Jesse's death. We disagree.

### *STANDARD OF REVIEW*

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). When reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.

Under a legal sufficiency review, we may not substitute our judgment for that of the jurors, who are the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). We therefore defer to the jurors' resolution of these issues and to their responsibility to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89. In resolving what the facts are and what reasonable inferences

2

may be drawn from them, the jurors may accept one version of the facts and reject another, and they may reject any part of a witness's testimony, even if uncontradicted. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).

## APPLICABLE LAW

Copeland was charged with the capital murder of a child younger than six years of age. *See* former TEX.PENAL CODE ANN. § 19.03(a)(8)(West 2011).[1] Capital murder includes the element that the actor intentionally caused the victim's death. *Morrow v. State*, 753 S.W.2d 372, 375 n.3 (Tex.Crim.App. 1988). Intent may be inferred from any facts which tend to prove its existence. Those facts include: (1) the acts, words, conduct of the accused and the method of committing the crime, *see Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App. 2002); (2) evidence of flight or attempts to cover up guilt, *see Bigby v. State*, 892 S.W.2d 864, 883 (Tex.Crim.App. 1994); and (3) the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties, *see Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995). In a murder case, evidence of a particularly brutal or ferocious mechanism of death, inflicted on a helpless victim, can be probative on the issue of intent or knowledge. *Patrick*, 906 S.W.2d at 487.

## DISCUSSION

When viewed in the light most favorable to the verdict, the evidence is sufficient to prove Copeland alone inflicted the fatal injury upon Jesse and intended to cause Jesse's death.

---

[1] Section 19.03(a)(8) now provides that a person commits capital murder if the person murders a child younger than ten years of age. TEX.PENAL CODE ANN. 19.03(a)(8)(West Supp. 2012).

3

## Source of Injury

The evidence adduced by the State established that Jesse's fatal injury occurred while Jesse was alone with Copeland. "When an adult defendant has had sole access to a child at the time [his] injuries are sustained, the evidence is sufficient to support a conviction for . . . murder if the child dies." *Garcia v. State*, 16 S.W.3d 401, 405 (Tex.App.--El Paso 2000, pet. ref'd). On the day in question, Copeland was the only adult taking care of Jesse and Jesse's half-brother, Malachi, because their mother had left earlier that morning to give birth to Copeland's son. Copeland admitted to slamming Jesse to the floor on that day. There was evidence this injury resulted in Jesse's death and it was less than one day old.

Copeland appears to argue that because there is no evidence showing that he alone caused the *other* injuries to Jesse's body, his conviction cannot stand.[2] Copeland's argument has no merit. As acknowledged by Copeland in his brief, "[n]one of the injuries, except the blunt force to the head and brain, caused [Jesse's death]."

We hold that the evidence was sufficient for a rational juror to conclude that Copeland inflicted the fatal injury upon Jesse. *See Bryant v. State*, 909 S.W.2d 579, 583 (Tex.App.--Tyler 1995, no pet.)(where evidence showed child had been left alone with defendant and injuries to child occurred approximately thirty minutes prior to child being brought to emergency room, evidence was sufficient to support conviction); *Elledge v. State*, 890 S.W.2d 843, 846 (Tex.App.--Austin 1994, pet. ref'd)(undisputed medical testimony placing adult defendant alone

---

[2] In the words of the medical director of the child abuse team at the hospital where Jesse was treated, "[Jesse] suffered from severe abusive head trauma, and he was a battered child with numerous injuries." Those injuries, as catalogued by this physician, included: (1) bruises on the head, right upper forehead, left eye, right eye, right eyebrow, right upper eyelid, right cheekbone, ear, chin, chest, armpit, left nipple, left upper arm, left elbow, left inner thigh, scrotum, ankles, feet, toes, buttocks, back, and hip; (2) trauma to the penis; (3) fractures of the right pelvic bone and sacrum; and (4) torn lip.

with child when fatal injuries were sustained supported conviction for injury to a child); *Butts v. State*, 835 S.W.2d 147, 151 (Tex.App.--Corpus Christi 1992, pet. ref'd)(injuries sustained by child established by medical testimony to have occurred at time adult defendant admitted to sole possession of child).

### Intent to Kill

The evidence adduced by the State also established that Copeland intentionally caused Jesse's death. As set forth above, the jury was permitted to rely on Copeland's words, acts, conduct, and method in committing the crime to infer he intended to kill Jesse. Copeland admitted to investigators that he slammed Jesse to the floor at approximately 10 a.m. but did not ask his neighbor to call 911 until 4 p.m. While Jesse lay unresponsive, first on the bed and then on the couch, Copeland went about his day as if nothing had occurred, smoking cigarettes, cooking, feeding Malachi, and walking to his next-door neighbor's house to use the phone to check on his girlfriend's and newborn's welfare. It was only when Jesse's breathing became labored that Copeland decided to seek help.

It was also permissible for the jury to rely upon Copeland's attempts to cover his tracks to infer he possessed the intent to kill Jesse. Copeland reported different versions of what transpired to those he encountered on that fateful day and the days immediately thereafter. Copeland told his next door neighbor and her family that Jesse had fainted, but offered no further explanation. Copeland, however, expounded upon his story when speaking to one of the first emergency responders at the scene. Copeland told that person that he heard a thud from another room in house and found Jesse lying on the floor, elaborating further that Jesse had fallen down a flight of stairs at some apartments a few days before. When Copeland spoke to investigators, he related

5

three different stories over the course of two custodial interviews three days apart. Copeland told investigators initially that Jesse fell, then that he pushed Jesse off the bed without intending to hurt Jesse, and finally that he grabbed Jesse by his shirt and slammed him to the floor.

The jury was likewise permitted to rely on the extent of Jesse's injuries, the manner in which he received them, and the relative size and strength of Jesse and Copeland to infer Copeland intended to kill Jesse. As noted above, Jesse had numerous other injuries to his body. Some of the more severe ones were black eyes and fractures to the pelvic bone and sacrum. Copeland admitted to investigators that he gave Jesse the black eyes, paddled Jesse with a board, and kicked Jesse with steel-toe boots. When Jesse was autopsied, he weighed thirty-six pounds.

Copeland contends that the jury could not have reasonably inferred that he intended to kill Jesse because there was "uncontroverted evidence" that "[he] called 911, administered CPR, showed concern over Jesse's well-being, contacted neighbors about the injury, [and] cooperated in the investigation by giving statements and medical history." Given the evidence of Copeland's callous, indifferent brutality recounted above, the jury was free to believe that Copeland intended to kill Jesse notwithstanding "uncontroverted evidence" of Copeland's "other behavior." *See Margraves*, 34 S.W.3d at 919; *Henderson*, 29 S.W.3d at 623. That the jury chose to disregard Copeland's other behavior was within its exclusive province, and in conducting our legal sufficiency review, we are prohibited from re-evaluating the weight and credibility of this evidence or substituting our judgment for that of the jury. *See Williams*, 235 S.W.3d at 750.

We conclude that the evidence is legally sufficient to support the jury's finding that Copeland intended to kill Jesse.

Issue One is overruled.

6

**RIGHT TO CROSS-EXAMINE AND CONFRONT WITNESSES**

In his second issue, Copeland argues the trial court violated his Sixth Amendment right to confront and cross-examine Jesse's mother. Specifically, Copeland complains that the jury should not have heard an audio recording in which he is told by investigators that Jesse's mother revealed to them that Copeland, among other acts, put Jesse in a barrel and hit Jesse with a board. We disagree.

When a defendant is given all the relief requested at trial, there is nothing to complain of on appeal. *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App. 1993). As shown by the following colloquy between the trial court and defense counsel, the trial court gave Copeland all the relief he requested:

> [THE COURT:] After the discussion, I'm going to sustain defendant's objections to the statements that are attributable to codefendant . . . Worthy. And so just make sure that the – those are not played to the jury.
> And with regard to the disk in evidence, if we cannot subsequently replace that with a redacted version, that if the jury needs to hear that, we'll just bring them out into courtroom and go through the same process of playing it again so that they don't have that disk.
>
> [DEFENSE COUNSEL:] Your Honor, the defense is agreeable to allow the state to retrack the disk to fit the court's ruling after it's played for the jury.

A few moments after this exchange, the State published a portion of the audio recording to the jury. [3] Copeland has thus not shown that the trial court failed to sustain his objection and thereby permitted the jury to hear the statements he challenges on appeal.

---

[3] Admittedly, the record is unclear whether the jurors heard the complained-of statements when the audio recording was played for them. This is because the portion of the recording published to the jury was not transcribed by the court reporter and because the challenged statements were not redacted from the audio recording that is part of the record on appeal. The above colloquy suggests that the jury did not hear these statements, as does the fact that the investigator made no mention of the challenged statements during his testimony at trial, either before or after the recording was published to the jury. As the appellant, Copeland bore the burden to make a record demonstrating that error occurred in the trial court. *Newman v. State*, 331 S.W.3d 447, 450 (Tex.Crim.App. 2011). Because the record does not so demonstrate, Copeland has not met his burden.

7

Issue Two is overruled.

## ADMISSION OF AUTOPSY PHOTOGRAPHS

In his third and final issue, Copeland asserts that the trial court erred in admitting autopsy photographs into evidence on the ground that they were more prejudicial than probative. Copeland contends the photographs, which are approximately two and one-half feet by three and one-half feet, were designed to inflame the passions of the jury and caused the jury to convict him strictly based on that emotion. We disagree.

### *STANDARD OF REVIEW*

The admissibility of a photograph is within the sound discretion of the trial court. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007). A trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007).

### *APPLICABLE LAW*

Photographs of the injuries a defendant has inflicted on a victim are relevant. *Gallo*, 239 S.W.3d at 762. Relevant evidence, however, may be excluded if its probative value is substantially outweighed by undue prejudice. TEX.R.EVID. 403. That said, "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Gallo*, 239 S.W.3d at 762. To determine whether autopsy photographs are more prejudicial than probative, a court may consider factors like: (1) the number of offered photographs; (2) the gruesomeness, size, and detail of the offered photographs; (3) whether the photographs are black and white or in color; (4) whether the photographs are close-ups; (5) whether the body depicted is naked or clothed; and (6) the availability of other

8

means of proof and circumstances unique to each individual case. *Id.*

## DISCUSSION

The probative value of the complained-of photographs is not *substantially outweighed* by undue prejudice. The photographs were highly probative of the one disputed fact concerning Jesse's death—whether Copeland intended to kill Jesse. As was stated earlier, Copeland admitted to investigators that he beat Jesse and slammed him hard to the floor, but claimed to them, and to the jury, that he never intended to kill Jesse. The photographs, close-ups of the fatal injuries to Jesse's brain discovered during the autopsy, were necessary to show that the internal injuries suffered by Jesse reflected a different situation. The photographs helped the jury to understand the extent of the fatal injuries suffered by Jesse. According to the medical examiner, the hemorrhages on the underside of Jesse's scalp, on his skull, and on his brain were indicative of blunt force trauma associated "with a fall from a height [greater than a bed] or with a serious accident such as an automobile crash . . .," not with a fall from a bed as Copeland claimed had occurred. In addition, the medical examiner testified the photographs would assist the jury in understanding what exactly his internal investigation revealed.

The photographs, while highly probative, were not unduly prejudicial. Although each photograph measured approximately two and one-half feet by three and one-half feet, there were only five of them.[4] Further, although the photographs are color close-ups of the fatal injuries to Jesse's head and brain, they are very clinical in nature establishing the location and nature of the hemorrhages to the underside of Jesse's scalp, his skull, and his brain. The gruesomeness of the

---

[4] The appellate record does not contain these photographs. While we can order the originals if necessary, we conclude that it is not necessary to do so in this case because the five challenged photographs are enlargements of five of the forty-five autopsy photographs admitted for record purposes. *See* TEX.R.APP.P. 34.6(g)(2)(authorizing appellate court to direct trial court clerk to send original exhibits).

9

photographs, if any, is attributable to the subject matter they depict, and the photographs "are no more gruesome that would be expected in this sort of crime." *Gallo*, 239 S.W.3d at 763. Moreover, when the photographs were admitted into evidence, the jury had already heard testimony from lay witnesses and medical personnel describing Jesse as "black and blue from head to toe," "unconscious," and "comatose." In other words, "[t]he [autopsy] photographs in this case depict what [Copeland] caused and what verbal testimony properly described." *Saldano v. State*, 232 S.W.3d 77, 101-02 (Tex.Crim.App. 2007).

Copeland argues that because the medical examiner acknowledged that the photographs did not need to be so large to explain his findings, the prejudicial effects of the photographs are heightened by their size. Copeland is correct that the medical examiner testified, during *voir dire* examination, that he "would [not] have to have [] photograph[s] so large" to explain his findings. However, as was stated earlier, the medical examiner also testified that these photographs would assist the jury in understanding what exactly his internal investigation revealed. "Displaying [] enlarged photograph[s] while the medical examiner testifie[s] to facts illustrated in the photograph enable[s] all members of the jury simultaneously to follow the witness's testimony." *United States v. Yahweh*, 792 F.Supp. 104, 108 (S.D.Fla. 1992)(holding that neither gruesome photographs nor 30 by 40 inch enlargements were unfairly prejudicial in trial of particularly heinous murders). Moreover, because of the nature of the injuries— the hemorrhages on the underside of Jesse's scalp, on his skull, and on his brain—there was a real danger that smaller photographs would not accurately reflect the presence of the injuries. Further, although these photographs magnified the fatal injuries, they by no means distorted the nature of the injuries. Accordingly, Copeland has not established that the trial court abused its discretion in admitting the

challenged photographs.   Issue Three is overruled.

## CONCLUSION

Having overruled all three of Copeland's issues, we affirm the trial court's judgment.

July 24, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

11