940 F.2d 653
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James R. GRABILL, Defendant-Appellant.
 No. 90-5352.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1991.
Decided July 29, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-89-310-A)
 Joseph N. Bowman, Alexandria, Va., for appellant.
 Quincy Leon Ollison, Assistant United States Attorney, Alexandria, Va., (Argued), for appellee; Henry E. Hudson, United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and JOHN T. COPENHAVER, Jr., United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 James R. Grabill was convicted on March 14, 1990 of one count of conspiracy to distribute and to possess with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. Sec. 846. Grabill appeals his conviction contending that the trial court erred in refusing to grant him a mistrial and in refusing to exclude certain evidence. We affirm his conviction.
 
 
 2
 On August 30, 1989, James Grabill endeavored to obtain a large quantity of crack cocaine from Tammy Obloy for sale to his friends. Miss Obloy was able to secure only one-half ounce and agreed to meet with Grabill at a Hyattsville, Maryland restaurant to conduct the sale. Miss Obloy and her roommate, Barbara Stickley, were met by Chris Carter, who provided them with a ride to the restaurant. Upon arriving at the restaurant, Miss Obloy met with Grabill, at which time Grabill indicated that he wanted to sample the crack cocaine prior to the sale. Grabill utilized Carter's vehicle for this purpose. After sampling the crack cocaine, Grabill indicated that it was of suitable quality and that his friends would arrive shortly to complete the transaction. When they did not appear, Misses Obloy and Stickley left the restaurant, after having advised Grabill to contact them on their pager when his friends arrived.
 
 
 3
 These friends were co-defendant William Gravitt and Special Agent Burke of the Drug Enforcement Agency who was acting in an undercover capacity. Gravitt had made arrangements with Grabill to sell two ounces of crack cocaine to Agent Burke. Around mid-day, Agent Burke and Gravitt arrived at the restaurant and met with Grabill. Grabill then paged Miss Obloy, and she and Stickley returned to the restaurant. Grabill introduced Misses Obloy and Stickley to Gravitt and Agent Burke. Miss Obloy then sold the one-half ounce of crack cocaine to Agent Burke and departed.
 
 
 4
 Following the successful completion of this sale, Grabill informed Miss Obloy that, for a fee, he could arrange similar transactions with Gravitt and Agent Burke on a regular basis. Later that same day, Grabill contacted Miss Obloy again, and indicated that his friends were pleased with the crack cocaine and were willing to pay $3,500.00 for three additional ounces. Miss Obloy called Richard Daniels, one of her sources for crack cocaine, who indicated that he had the requested amount, and that he would part with it for the stated price. Daniels, and his friend Keefe Blake, then picked up Misses Obloy and Stickley and traveled to Grabill's house to arrange the sale. Grabill, Gravitt, and Frank Higgins were present at the home when they arrived. Gravitt then made several phone calls to Agent Burke, with Gravitt, Grabill, and Agent Burke finally agreeing that the sale would take place in Arlington, Virginia.
 
 
 5
 Grabill agreed to wait at his home while Gravitt, Daniels, Blake, and Higgins traveled to Arlington to conduct the sale with Agent Burke. However, when Daniels attempted to complete the transaction with Agent Burke, he and the others were arrested. Grabill became concerned after some time had elapsed without Daniel's return and he phoned Miss Obloy to determine whether anything was amiss. Miss Obloy informed Grabill that Daniels and the others had been arrested. Grabill then fled the area but was apprehended some two months later, on November 7, 1989.
 
 
 6
 Grabill was indicted on one charge of conspiracy to distribute more than 50 grams of crack cocaine and one substantive count of distributing more than 50 grams of crack cocaine. Grabill pleaded not guilty. Following his trial, Grabill was convicted of the conspiracy count and sentenced to a term of imprisonment of 121 months.* He appeals.
 
 
 7
 Grabill first contends that the trial court erred in refusing to grant him a mistrial based on potential jury bias. Apparently, during the course of the trial, a Drug Enforcement Agent passed through the bar of the courtroom and wrote a note to the prosecutor. The note indicated that the defendant had made threats to two witnesses. During the subsequent lunch break, a juror asked the Marshal whether the conduct of the agent, in sitting at the prosecutor's table, was proper. The Marshal then brought the matter to the attention of the court.
 
 
 8
 The trial court held a hearing to explore the matter. After being apprised of the agent's actions and the contents of the note, the court reprimanded the agent for her actions and determined that an instruction should be given to the jury stating that the note was unrelated to the case and that they should draw no prejudicial inference against the defendant from the actions of the DEA agent. Grabill, however, moved for a mistrial. The court denied the motion, but decided to conduct an inquiry of the juror.
 
 
 9
 The court then brought the jury into the courtroom and asked the juror whether he had read the note. The juror stated that he had not and that his concern was that whether the agent was authorized to sit at the prosecutor's table. The court informed the juror that the agent was not so authorized, but that the agent's actions were not related to the case. The court further instructed the jury that they should "draw no inference of guilt of the defendant from it or misbehavior on the part of the Government by it." Following this instruction trial was recommenced.
 
 
 10
 As we stated in United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir.1984), and upon which Grabill relies, the decision to grant or deny a mistrial is within the discretion of the trial judge, and this court will not overturn that decision absent a clear abuse of discretion. In Thompson, after viewing a photograph of a child who died from starvation, a juror made repeated equivocal statements about his ability to proceed with an open mind. The trial judge denied the mistrial motion and we reversed. Grabill now suggests that it was an abuse of discretion for the trial court to fail to specifically ask whether the juror could proceed with an open mind. Given the facts of this case, we do not agree. Unlike the case in Thompson, where such questions were asked, here the juror did not express any doubt as to his ability to proceed with an open mind, nor do we feel any such inference by the court was required. The challenged juror was merely curious as to the proper conduct of affairs at the counsel tables. The court's instructions to the jury that the agent's actions were unrelated to the case and that they should take no inference therefrom were quite adequate in this situation to rebut any potential prejudice to the defendant. Accordingly, the district court did not abuse its discretion in denying the mistrial motion.
 
 
 11
 Grabill next contends that the trial court abused its discretion in refusing to exclude the testimony of Chris Carter. Carter testified that he had driven Misses Obloy and Stickley to the Hyattsville restaurant on August 30, 1989. He further testified that Obloy and Stickley went there to meet Grabill, and that Grabill sampled crack cocaine in his car. Grabill contends that this evidence was irrelevant to the conspiracy charged. We do not agree. Briefly stated, Carter's testimony placed Grabill at the Hyattsville restaurant on the date that the first sale to Agent Burke took place. It also established a connection between Grabill and Miss Obloy, and showed that Grabill tested crack cocaine provided by Miss Obloy. This testimony combined with that of other witnesses to support the conclusion that Grabill was involved as a member of the drug conspiracy. Thus Carter's testimony was relevant and properly admitted at trial.
 
 Accordingly, the judgment of conviction is
 
 12
 AFFIRMED.
 
 
 
 *
 The substantive count was dismissed following the jury's advice to the court that it was hung on that count