23 F.3d 403
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Leon ANDERSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Leon ANDERSON, Defendant-Appellant.
 Nos. 92-5601, 93-5340.
 United States Court of Appeals, Fourth Circuit.
 Submitted: February 9, 1994.
Decided: May 23, 1994.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. M.J. Garbis, District Judge; Norman P. Ramsey, Senior District Judge. (CR-91-295-R, CR-91-295-MJG).
 Steven A. Feldman, Feldman & Feldman, Hauppauge, NY, for appellants.
 Lynne A. Battaglia, U.S. Atty., Carmina S. Hughes, Asst. U.S. Atty., Joseph L. Evans, Asst. U.S. Atty., Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before WILKINS and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 James Leon Anderson appeals from his conviction and sentence for bank robbery (Appeal No. 92-5601), and the denial of his pro se motion for transcripts at government expense. (Appeal No. 93-5340). For the reasons set forth below, we affirm.
 
 
 2
 Anderson was tried on four counts of bank robbery. 18 U.S.C.A. Sec. 2113(a) (West Supp.1993). One of the counts was severed from the others and tried first. He was found guilty in the first trial, and, in the second trial, the jury returned guilty verdicts on two of the counts and acquitted him of the other.
 
 Anderson's First Trial
 
 3
 During her testimony, Yvonne Campbell, the teller at the American National Savings Association that was robbed on December 4, 1990, left the witness stand to identify items on a chart. As she returned to the witness stand, she passed Anderson who allegedly said: "Shut up and don't look at me." Campbell resumed the witness stand and identified Exhibits 13-18 as photographs of the man who robbed the bank on December 4, 1990. She also identified the photographic array from which she had previously selected Anderson's photograph.
 
 
 4
 After Campbell's testimony, the court consulted with counsel about excluding Anderson from the courtroom due to his disruptive behavior. At this time, the prosecutor informed the court that Campbell told the case agent about the threat and that she "couldn't identify him ... because she was afraid of him." The court commented that Anderson had taken a "rather menacing approach" to the court and to the entirety of the proceeding.
 
 
 5
 At the conclusion of the testimony, the court instructed the jury and asked defense counsel if he had any objections. Counsel stated that he was "satisfied." The court further instructed the jury that the record was not available on request; rather, the jurors were to rely on their collective recollection as to the testimony given. Neither party objected.
 
 Anderson's Second Trial
 
 6
 On March 27, 1990, Signet Bank was robbed. Emily Hess saw the perpetrator leaving the bank, but did not see the robbery occur. When she went to comfort the victim teller, Hess saw the demand note stating that the robber had a gun and wanted fifties and hundreds.
 
 
 7
 On April 6, 1990, Signet Bank was robbed again. This time, Hess was the victim teller. The robber handed her a note which stated that he had a gun. Hess testified that the note was "exactly like" the one she saw after the March 27th robbery. She described the robber as a black man in his thirties, with a slight build and no facial hair. Hess made an in-court identification of Anderson as the bank robber.
 
 
 8
 Hess testified that she had identified Anderson in a photographic array by signing her initials and the date on the back of his photograph. The photographic array was marked for identification as Exhibit 10-A through 10-F. Anderson's photograph was 10-B. The prosecutor showed Hess the back of one of the exhibits and asked if she recognized anything. Hess replied, "[t]hat's not my signature there."
 
 
 9
 During a brief recess, the prosecutor informed the court that the initials on the back of the photograph belonged to the teller who testified in the first trial. The court authorized the government to redact the back of Exhibit 10-B to display only Hess's initials. The photo array was renumbered Exhibit 14-A through 14-F, and the order was reversed so that Anderson's photograph was 14-E, rather than 10-B. Exhibits 10-A through 10-F were not offered into evidence and were not shown to the jury.
 
 
 10
 Anderson moved for a mistrial, arguing that the jury was able to see the initials on the reverse of the photograph and that he was prejudiced by this. The court denied the motion, finding no prejudice to Anderson because the jury did not and could not have seen the front of the exhibit.
 
 
 11
 Anderson then objected to Hess's prior in-court identification as unduly suggestive. She had described the robber as a black man, and Anderson was the only black man in the courtroom, outside the jury box. Anderson also argued that his being seated with defense counsel tainted Hess's in-court identification of him. The court denied the motion for mistrial.
 
 
 12
 At the conclusion of all the testimony, including Hess's identification of Exhibit 14-E, the court instructed the jury. The final instruction was that a copy of the record and the jury charge would not be available, and the jurors should rely on their recollection as to the trial facts, witnesses's testimony, and applicable law. Following the charge, defense counsel stated that he was satisfied with the instructions.
 
 Sentencing
 
 13
 The Presentence Report recommended a two-point upward adjustment because of Anderson's statement to Campbell to shut her mouth and not to look at him. At the sentencing hearing, the prosecutor offered to testify regarding the statement.
 
 
 14
 Over Anderson's objection, the district court concurred with the recommended enhancement and increased Anderson's offense level by two. See United States Sentencing Commission, Guidelines Manual, Sec. 3C1.1 (Nov.1992). Finding that Anderson attempted to obstruct justice, the court noted Anderson's attempts to intimidate everyone and that Anderson glared at everyone and badgered his attorney during trial. The court found that Campbell was "visibly disconcerted" by Anderson's threatening remark and that the remark was recorded at the time by the prosecutor. Based upon these findings, the court found by a preponderance of the evidence that the threat had been made and an obstruction of justice adjustment was warranted.
 
 
 15
 In No. 92-5601, Anderson appeals his conviction and sentence, and in No. 93-5340, Anderson appeals from the order denying his motion to proceed in forma pauperis and be provided with transcripts and the record on appeal at government expense of a mandamus action in this Court. The district court denied the motion, noting that Anderson's court-appointed counsel had the transcripts and necessary orders.
 
 Denial of read-backs
 
 16
 Anderson contends that the district court committed plain error when it instructed the jury that no read-backs would be permitted of the testimony or the charge. See United States v. Criollo, 962 F.2d 241 (2d Cir.1992) (error to announce prohibition against read-backs of testimony). To reverse for plain error, this Court must identify an error which is plain, which affects substantial rights, and which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 61 U.S.L.W. 4421, 4424 (U.S.1993). For purposes of this appeal, we will assume that the instruction was erroneous.
 
 
 17
 We must determine whether the alleged error is "plain," or "clear under current law." Olano, 61 U.S.L.W. at 4424. Criollo is the only law on the issue, and the Second Circuit's opinion is not binding upon this Court. We have held that upon request by the jury, the district court has discretion to read back testimony. United States v. Meredith, 824 F.2d 1418, 1425 (4th Cir.), cert. denied, 484 U.S. 969 (1987). We find that the alleged error is not clear under current law, and therefore is not plain. See Olano, 61 U.S.L.W. at 4424.
 
 
 18
 The third prong of the plain error analysis addresses whether the alleged error resulted in prejudice. Olano, 61 U.S.L.W. at 4424. We reject Anderson's contention that prejudice is presumed from the prohibition of read-backs. See Criollo, 962 F.2d at 244 (applying harmless error analysis to prohibition of read-backs); United States v. McCaskill, 676 F.2d 995, 1001-02 (4th Cir.) (requiring showing of prejudice from error in jury instructions), cert. denied, 459 U.S. 1018 (1982). Rather, Anderson must show that the error had an impact on the outcome of the trial. Anderson admits that "there is no way to determine whether the improper jury charge affected the jury's deliberations." (Reply Brief at 7). We find that Anderson failed to show that the alleged error affected his substantial rights; therefore, reversal for plain error is not warranted on this basis also. See Olano, 61 U.S.L.W. at 4424.
 
 Obstruction of Justice
 
 19
 Anderson argues that the enhancement for obstruction of justice was not proven by a preponderance of the evidence and that an evidentiary hearing was required to determine the reliability of the information on which the court based the enhancement. He concedes that there is no limit on the type of information a sentencing court may consider. (Reply Brief at 9); see 18 U.S.C.Sec. 3661 (1988); United States v. Tucker, 404 U.S. 443, 446 (1972).
 
 
 20
 At sentencing, the court gave Anderson an opportunity to contest the enhancement. Exercising this opportunity, Anderson did not contest the fact that he had made the statement. We find that Anderson had the opportunity to contest the reliability of the evidence in support of the enhancement and failed to do so.
 
 
 21
 The sentencing judge, noting the prosecutor's statements on the record after Campbell's testimony and his opportunity to observe Anderson's conduct and Campbell's demeanor, based the enhancement upon both the alleged threat and the menacing conduct. We find that the district court's finding that Anderson attempted to obstruct justice was not clearly erroneous. United States v. Blackburn, 940 F.2d 107, 109 (4th Cir.1991) (standard); see United States v. Shoulberg, 895 F.2d 882, 885 (2d Cir.1990) (court entitled to draw reasonable inferences from words used and pertinent circumstances).
 
 Denial of Mistrial
 
 22
 Anderson alleges a clear abuse of discretion in the court's denial of his motion for a mistrial based upon the cumulative effect of the photograph which was not identified and the in-court identification. See United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir.1984).
 
 The Photo Array
 
 23
 Hess's comment that it was not her signature on the back of the exhibit was not so prejudicial as to warrant a mistrial. See United States v. Brooks, 957 F.2d 1138, 1142 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S.1992). The back of an exhibit was shown to the witness and was not identified. Because the jury could not see the exhibit, we find that there was no reasonable possibility that the verdict was influenced by Hess's remark. See United States v. Seeright, 978 F.2d 842, 849 (4th Cir.1992); United States v. Barnes, 747 F.2d 246, 250 (4th Cir.1984). Further, we find no clear abuse of discretion in the denial of a mistrial on this basis.
 
 In-Court Identification
 
 24
 Initially, we note that Anderson failed to object at, or prior to, the time the in-court identification was made. See Fed.R.Evid. 103(a)(1) (must timely object to admission of evidence); United States v. Parodi, 703 F.2d 768, 783 (4th Cir.1983) (objection not properly invoked is waived).
 
 
 25
 Moreover, an in-court identification should be suppressed only when it is so suggestive as to be unreliable. United States v. Hughes, 716 F.2d 234, 241 (4th Cir.1983). Anderson does not dispute that the in-court identification came after a valid photo array identification. We find that the identification was not impermissibly suggestive. See United States v. Bennett, 675 F.2d 596, 597-98 (4th Cir.), cert. denied, 456 U.S. 1011 (1982).
 
 
 26
 Because Hess's in-court identification of Anderson was not impermissibly suggestive, we find no abuse of discretion in the district court's denial of Anderson's motion for a mistrial. See Bennett, 675 F.2d at 598 (propriety of in-court identification is within the discretion of the trial judge). We further find that the cumulative effect of the in-court identification and Hess's failure to identify the signature on the back of Exhibit 10-B does not warrant a mistrial. Thompson, 744 F.2d at 1068.
 
 Denial of transcripts
 
 27
 Transcripts may be provided at government expense if a party qualifies as a pauper and raises a "substantial question." 28 U.S.C.A. Sec. 753(f) (West 1993). Anderson requested the transcripts and the record on appeal so that he may file a petition for writ of certiorari in the Supreme Court contesting this Court's denial of his mandamus petition. Because transcripts are not required to file a petition for writ of certiorari, Sup.Ct. R. 14, 26.1, and the requested documents are not part of the record in Anderson's mandamus case, we affirm the denial of Anderson's motion.* See 28 U.S.C.A. Sec. 753(f).
 
 
 28
 For these reasons, we affirm Anderson's conviction and sentence (No. 92-5601), and the district court order denying Anderson's request for transcripts (No. 93-5340). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 29
 AFFIRMED.
 
 
 
 *
 We note that the requested transcripts had been provided to Anderson's appointed counsel for use in his direct appeal