**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5267

CHARLES EDWARD DODSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CR-94-106)

Argued: April 11, 1997

Decided: October 31, 1997

Before RUSSELL and WIDENER, Circuit Judges, and
DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** William G. Wentz, Bedford, Virginia, for Appellant. Ray
B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville,
Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United
States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles Dodson appeals his convictions for conspiracy to possess with intent to distribute cocaine powder and base, in violation of 18 U.S.C. §§ 841(a) and 846; for possession with intent to distribute cocaine, in violation of 18 U.S.C. § 841(a); and for using or carrying a firearm in relation to a drug crime, in violation of 18 U.S.C. §§ 2 and 924(c).[1] We affirm in part, vacate in part, and remand to the district court for further proceedings with this opinion.

I.

At trial the Government established that beginning in 1990 and continuing through 1994, Charles Dodson and his brother Carroll Dodson were involved in a conspiracy to distribute cocaine. They sold cocaine from several locations in Danville, Virginia and ran their organization like a retail distribution network. The Dodsons and a dozen co-conspirators would obtain large quantities of premium cocaine, which they cut into smaller amounts or cooked into rocks of crack cocaine for street sale. They would then deliver the cocaine to distribution sites known as "the Fortress," and "the Farm." At these sites, lower level conspirators would sell the drugs directly to cocaine users. The sellers would in turn deliver the proceeds from their sales to the person immediately above them in exchange for more cocaine to sell. It was known that whichever Dodson brother was present at the distribution site was in charge of operations at that site.

On January 8, 1993, Danville police executed a search warrant on

_____

[1] Dodson received 420 months imprisonment for the conspiracy conviction and 240 months for the possession conviction, to be served concurrently; and 60 months for the firearm conviction to be served consecutively.

the Fortress. A team of twelve officers knocked on the doors and announced their presence and intent. Three to five minutes elapsed before the occupants allowed the officers inside. During the delay, the officers heard movement from inside the house. Upon entering the Fortress, the officers encountered Charles Dodson ("Dodson") and four men calmly sitting in the front room. The ensuing search of the building yielded two handguns hidden in a bedroom wall, cash, and a black sticky substance in a wood-burning stove, which field tested positive as cocaine.

## II.

Dodson challenges his convictions on numerous constitutional and evidentiary grounds. Additionally, he contends the district court improperly calculated his sentence. We address each contention in turn.

## A.

Dodson's first appellate issue involves his convictions under 18 U.S.C. §§ 2 and 924(c) for aiding and abetting Jeremaine Lavonne Chase, a co-conspirator, in using or carrying a firearm during and in relation to a drug trafficking offense. Dodson asserts that we should vacate his conviction because there was no evidence that Chase committed the predicate § 924(c) offense on January 8, 1993.

In United States v. Chase,[2] we vacated Chase's § 924(c)(1) conviction after determining that the jury instructions in Chase's trial failed to ensure a constitutional verdict for the predicate offense.[3] Because Dodson's 18 U.S.C. §§ 2 and 924(c) convictions relied upon the successful prosecution of Chase having committed the predicate offense, we vacate Dodson's conviction in light of Chase, and remand his case to the district court for resentencing.

_____

[2] No. 96-9522 (4th Cir. filed Oct. 17, 1997).

[3] Id. at 10.

3

B.

Next, Dodson contends the district court's instruction on "posses-sion" was insufficient because the district judge did not use the exact "possession" that Dodson proposed. We review the district court's instruction under the abuse of discretion standard,[4] and accordingly hold that Dodson's assertion is meritless because the district court adequately instructed the jury on possession.

C.

At trial, Deputy Barnwell, an important government witness, and an investigator of Dodson's illegal drug activities, notified the court that he recognized a male juror. Barnwell informed the district court that during his investigation of another case, he had seen the juror consorting with known cocaine purchasers and users. Pursuant to Barnwell's information, the Government requested that the juror be excused. Following extensive argument by the parties, the district court complied with the Government's request and dismissed the juror. Dodson asserts that excusing the juror violated his Sixth Amendment[5] right to be tried by an impartial jury and that the judge should have declared a mistrial after excusing the juror. We disagree.

When a district court discovers a biased juror has been impaneled in a criminal trial, the court must find less drastic alternatives in deal-ing with that juror than declaring a mistrial.[6] One advisable alternative is removing the juror and replacing him with an alternate.[7] Because the district court employed this exact measure, we hold that dismiss-ing the juror did not violate Dodson's Sixth Amendment right.

D.

Next, Dodson contends the Government failed to present sufficient evidence proving the black sticky substance recovered from the

_____

[4] **United States v. Bostian**, 59 F.3d 474, 480 (4th Cir. 1995).
[5] U.S. Conts. Amend. VI.
[6] **United States v. Thompson**, 744 F.2d 1065, 1068 (4th Cir. 1984).
[7] **Id.**

wood-burning stove at the Fortress was cocaine because the police field tested the substance and did not submit it for laboratory analysis. He argues that, absent a Certificate of Analysis from a laboratory, the jury was compelled to rely solely on the testimony of Dexter Holley, a drug user and convicted felon, that Dodson possessed cocaine on the night in question. We disagree.

Lay testimony may be sufficient to establish the identity of a substance without the introduction of laboratory analysis.[8] In the instant case, Holley testified that he purchased cocaine from Dodson before the police arrived; that he experienced the cocaine's effect after he injected it into his body; and that when the police "knocked and announced," Dodson and others threw the cocaine into the wood-burning stove. Moreover, we are unaware of any requirement that substances, which have been properly field tested, be submitted for laboratory analysis. Accordingly, we hold that the Government, through Holley's testimony and the results of the field test, presented sufficient evidence from which a reasonable jury could conclude the black sticky substance found in the wood-burning stove was cocaine.

E.

Finally Dodson challenges the district court's calculation of his sentence.

1.

First Dodson asserts the district court improperly adjusted his sentence upward to reflect his leadership responsibilities and activities in the conspiracy. Section 3B1.1 of the Sentencing Guidelines requires the district court to upwardly adjust a defendant's sentence if the court finds by a preponderance of the evidence that the defendant was an organizer, leader, manager, or supervisor of the overall criminal activity.[9] We review for clear error the district court's factual determinations concerning Dodson's role.[10]

_____

[8] **United States v. Dolan**, 544 F.2d 1219, 1221 (4th Cir. 1976).
[9] U.S. Sentencing Guidelines Manual, § 3B1.1(b) (1996).
[10] 18 U.S.C. § 3742(e); United States v. Gary, 18 F.3d 1123, 1127 (4th Cir. 1994).

5

At sentencing the district court found that: (1) Dodson was involved during the entire duration of the conspiracy; (2) Dodson was one of the select few who delivered cocaine to the organization's distribution centers; (3) Dodson supervised the selling of the cocaine at the distribution centers; (4) Dodson collected the cash generated from the street sales of cocaine; and (5) Dodson was in charge of the Fortress on the night of his arrest. We find no error in the district court's determination that Dodson was a manager and supervisor. Accordingly, we hold that the district court did not err in upwardly adjusting Dodson's sentence by three levels.

2.

Next, Dodson asserts the district court improperly increased his criminal history by two points pursuant to § 4A1.1 of the Sentencing Guidelines. Section 4A1.1 requires the district court to adjust a defendant's criminal history upward by two levels if it finds by a preponderance of the evidence that the defendant was under some criminal justice control at the time of the offense of conviction. Dodson maintains the district court erred in applying § 4A1.1 because his arrest for conspiracy on January 8, 1993, predated his state court probation, which was imposed on January 20, 1993, and ran through November 1993. The question before us, therefore, is whether the district court properly determined that there was evidence showing that Dodson was a member of the conspiracy after the Virginia state court had placed him on probation.

Conspiracy is a continuing offense that does not end until its termination is affirmatively established.[11] Termination occurs either on the date of the indictment or the defendant's voluntary withdrawal from the conspiracy.[12] In the instant case, because there was no evidence that Dodson voluntarily withdrew from the conspiracy, his involvement therein continued until the grand jury issued the indictment against him on August 19, 1994. Accordingly, the district court did not err in finding that Dodson was on probation during the offense,

---

[11] **United States v. Sheffer**, 896 F.2d 842, 844 (4th Cir. 1990).
[12] **United States v. Maxim**, 55 F.3d 394, 398 (8th Cir.), cert. denied, 116 S. Ct. 265(1995).

6

and we hold it appropriately increased his criminal history by two levels.

3.

Finally, Dodson contends the district court incorrectly attributed more than 1.5 kilograms of cocaine to him for sentencing purposes because it relied, in part, on the testimony of an unreliable witness. We will not disturb the district court's factual findings on appeal unless they are clearly erroneous.[13]

Dodson's mere assertion that a witness's testimony was unreliable fails to justify an examination of the district court's factual findings. Regardless, we note that the district court did not rely solely on this witness's testimony when calculating Dodson's sentence. Therefore, we hold the district court did not err in attributing the cocaine to Dodson for purposes of sentencing.

F.

For the foregoing reasons, Dodson's convictions are affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

_____

[13] 18 U.S.C. § 3742(e); Gary, 18 F.3d at 1127.

7