**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

BINH DUY PHAM,
　　　　　　　*Defendant-Appellant.*

No. 02-4841

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-02-275)

Argued: September 26, 2003

Decided: October 29, 2003

Before WIDENER, MICHAEL, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Frank Willard Dunham, Jr., Federal Public Defender, Alexandria, Virginia, for Appellant. LeDora Knight, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Assistant Federal Public Defender, Frances H. Pratt, Research and Writing Attorney, Alexandria, Virginia, for Appellant. Paul J. McNulty, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Binh Duy Pham was convicted by a jury on two drug charges — distribution of ecstasy, in violation of 21 U.S.C. § 841(a), and conspiracy to distribute ecstasy, in violation of 21 U.S.C. § 846. The district court sentenced Pham to 78 months of imprisonment and three years of supervised release. Pham appealed, arguing that (1) the district court improperly removed for cause a prospective juror who stated that she was not certain she could be impartial, in part because she was Vietnamese (like Pham and the key witnesses) and (2) the district court improperly enhanced his sentence for obstruction of justice without making an independent finding that Pham committed perjury at trial. For the reasons that follow, we affirm the judgment of the district court.

I.

A grand jury returned an indictment charging Pham with conspiracy to distribute, and distribution of, methylenedioxymethamphetamine (commonly known as ecstasy). At the outset of *voir dire*, defense counsel introduced Pham to the jury along with his interpreters. Counsel explained that Pham's native language is Vietnamese.

After asking some preliminary questions, the district court asked the potential jurors whether there were any members of the jury panel "who because of individual beliefs, moral or religious experiences or attitudes feel that you cannot sit in judgment of another human being as a juror and follow the instructions of the law." There being no response, the district court asked again, "Is there any person because of religious, moral or other attitude believes you cannot sit as a juror and follow the instructions of law as the judge would give them to you at the end of the case?" Again, there was no response. The district court rephrased his question once more: "Do you know of any reason

why you could not be fair to both the accused and the government in this case?"

At this point, prospective juror Mai Bui indicated that she wished to "[g]ive a reason why I cannot sit." The court called Bui to the bench, where this exchange followed:

MS. BUI: Because I am Vietnamese and I'm Catholic, I think I can't sit, be fair to the — to sit as a juror.

THE COURT: Okay. Why?

MS. BUI: Why? I think I have tend to be more compassionate? So, I cannot sit.

THE COURT: Okay, well —

MS. BUI: But, as you mentioned when I came up to you, I can speak Vietnamese and I can speak English very well, and I'm a doctoral student in theology, so maybe I don't know. I have very mixed feelings about, you know.

THE COURT: Okay. When you say you have fixed [sic] feelings, do you have an opinion right now?

MS. BUI: No.

THE COURT: Do you think he's guilty or —

MS. BUI: No, except that, you know, as a Vietnamese, I feel that I cannot be fair, you know.

. . .

THE COURT: Suppose he was Anglo, the accused was Anglo, do you think you would be fair to someone who is Anglo?

MS. BUI:         I'm sure that I'd be fair.

THE COURT:       Suppose that he was Black. Do you think
                 you would be fair to him if he was a Black
                 defendant?

MS. BUI:         Yeah, but you know the situation because
                 the situation of he's — I don't know about
                 him, but of our situation I think, emo-
                 tional.

Defense counsel then attempted to rehabilitate Bui by examining the
reasons why she thought she might not be fair:

[Counsel]:       . . . Are you saying that because of your
                 religious background, because of your eth-
                 nic background, you're a compassionate
                 person? Is that —

MS. BUI:         Uh-huh, yeah.

[Counsel]:       Can you say as you stand here whether
                 you were — if you were called upon to
                 make a verdict in this case would be influ-
                 enced by the fact that Mr. Pham and I
                 think some government witnesses are of
                 the same national origin as you?

MS. BUI:         I think, if I hear all the witness[es], I may
                 be fair. But it's going to be very hard for
                 me.

MR. CLARK:       Because of your religious beliefs?

MS. BUI:         Yeah, and you know, my Vietnamese
                 background, too.

   The government moved to strike Bui for cause on the ground that
she "says candidly that she does not believe she can be fair because

of her ethnic background and also because of [her] religious background. And at one time she started to get very emotional and well up as if she was going to cry as she was discussing this." The district court struck Bui from the venire, concluding that "she exhibited that she has an opinion that because of her ethnic background and religion that she would find it difficult and maybe could not be fair." The district court further noted that Bui "seemed to well up at one point that she would cry, and I was afraid to push her."

At trial, the government's witnesses testified that Thanh Ngo, a government informant, arranged to purchase 3,000 pills of ecstasy from Tuoc Kim Bao for $23,250. Bao agreed to the deal after concluding that he could obtain 3,000 pills from his supplier, Pham. On March 27, 2002, Bao drove to Pham's house, where he picked up Pham and a box containing the ecstasy pills. Pham placed the box in the trunk of Bao's car. Bao and Pham then drove from Philadelphia, Pennsylvania (where they lived) to the Fairfax, Virginia restaurant where the sale was to take place.

When they arrived at the restaurant, Bao called Ngo, who was waiting inside. While they waited for Ngo to come out to the car, Pham retrieved the box of pills from the trunk. According to Bao, Pham then transferred the pills into an empty Burger King bag and placed the bag on the floor by his feet. Almost immediately after Ngo got into the back seat of Bao's car, Ngo asked about the pills. Pham picked up the bag from the floor by his feet and showed it to Ngo. Ngo instructed Bao to deliver the bag to Ngo's car, and he left. Ngo retrieved a bag of money from the trunk of his car, got back in his car, and exchanged bags with Bao. Bao was arrested when he left Ngo's car. Pham, who remained in Bao's car, was also arrested. The officer who searched Pham after his arrest discovered an address book, three ecstasy tablets, two cell phones, and $1165 in cash.

Pham testified in his own defense. He admitted that he knew Bao was a drug dealer, but he denied that he was Bao's supplier. Pham further testified that he thought the purpose of the trip to Fairfax was to collect money and pay gambling debts, not to deliver drugs. Pham also stated that he gave Bao an *empty* box on the morning of March 27; it was not until Bao transferred the pills from the box to the Burger King bag that Pham realized there were drugs in the box.

After two days of trial, the jury convicted Pham on both counts of the indictment. The presentence report ("PSR") recommended enhancing Pham's sentence for obstruction of justice based on his testimony at trial. The PSR described the testimony as follows:

> At trial, the defendant testified that he was not aware that the foil package given to the "confidential source" contained MDMA, and it was his understanding Bao (co-defendant) was making the trip to Virginia to collect a gambling debt. However, Tuoc K. Bao's (co-defendant) testimony revealed that the defendant was the supplier of the MDMA tablets and he was fully aware that the purpose of the trip to Virginia was to distribute the 3,000 MDMA tablets. The "confidential source" collaborated [sic] Tuoc K. Bao's testimony.

Pham made no objection to the presentence report, including the recommended enhancement for obstruction of justice. The district court adopted the findings contained in the presentence report and sentenced Pham to 78 months of imprisonment. This appeal followed.

## II.

Pham raises two claims on appeal: (1) that the district court's decision to remove Bui from the jury panel on account of her perceived bias violated both the Due Process Clause of the Fifth Amendment and 28 U.S.C. § 1862 and (2) that the district court improperly enhanced Pham's sentence for obstruction of justice without making an independent finding that he had perjured himself during trial.

## A.

Pham contends that the removal of Bui from his jury violated both his Fifth Amendment due process right and a statutory prohibition against discrimination in seating jurors. Pham argues that the district court improperly removed Bui from the venire on account of her ethnicity and religion, not on account of her inability to be impartial. We review a district court's decision to remove a prospective juror for cause for "manifest abuse of discretion." *Poynter v. Ratcliff*, 874 F.2d 219, 222 (4th Cir. 1989).

When presented with a request to remove a prospective juror for cause, the district court must determine whether the juror "could be fair and impartial and decide the case on the facts and law presented." *See United States v. Capers*, 61 F.3d 1100, 1105 (4th Cir. 1995). The Supreme Court of the United States has noted that "the determination is essentially one of credibility, and therefore largely one of demeanor." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). Thus, "the trial court's resolution of such questions is entitled, even on direct appeal, to special deference." *Id.*

Bui volunteered her own concerns about her ability to be fair and impartial. She stated on multiple occasions that she did not believe she could be fair. At best, Bui stated that it would be "very hard" for her to remain impartial. As she explained these concerns, Bui appeared to counsel and the court to be distressed. Given these circumstances, the district court was well within its discretion to remove Bui from the venire. *See Capers*, 61 F.3d at 1104-05 (affirming district court's removal for cause of prospective juror who said "he thought he might favor the government"); *United States v. Thompson*, 744 F.2d 1065, 1067-68 (4th Cir. 1984) (reversing conviction where district court declined to remove a juror who stated during trial that he was "not sure that [he] could be totally fair" after viewing certain evidence).[1]

## B.

Pham further contends that the district court erred by enhancing his base offense level for obstruction of justice without making a specific finding that Pham had committed perjury. Because Pham did not object to this enhancement at sentencing, we review the district court's ruling for plain error. *See United States v. Olano*, 507 U.S.

---

[1]Because we conclude that the district court excused Bui from jury service on account of its concerns about her ability to be impartial — not on account of her race or ethnicity — Pham's claims under both the Fifth Amendment and 28 U.S.C. § 1862 fail for lack of a factual predicate. Thus, we need not decide here whether the rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986), applies to for-cause challenges. *Cf. United States v. Elliott*, 89 F.3d 1360, 1364-65 (8th Cir. 1996) (holding that *Batson* is limited to peremptory challenges).

725, 732-37 (1993). Under this standard of review, Pham must establish an error that is plain and affects substantial rights. *See id.* at 732. "Deviation from a legal rule is 'error' unless the rule has been waived." *Id.* at 733. An error is plain if it is "clear under current law," and a plain error affects substantial rights if it "affected the outcome of the district court proceedings." *Id.* at 734. Upon finding a plain error, we may grant relief only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736.

The *United States Sentencing Guidelines* instruct a sentencing court to apply a two-level enhancement to the base offense level if the defendant committed perjury during his testimony at trial. U.S.S.G. § 3C1.1 & comment. n.4(b). A defendant commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). "*[I]f a defendant objects* to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish" perjury as defined above. *Id.* at 95 (emphasis added).

The presentence report recommended an enhancement based on the falsity of Pham's trial testimony:

> At trial, the defendant testified that he was not aware that the foil package given to the "confidential source" contained MDMA, and it was his understanding Bao (co-defendant) was making the trip to Virginia to collect a gambling debt. However, Tuoc K. Bao's (co-defendant) testimony revealed that the defendant was the supplier of the MDMA tablets and he was fully aware that the purpose of the trip to Virginia was to distribute the 3,000 MDMA tablets. The "confidential source" collaborated [sic] Tuoc K. Bao's testimony.

> Accordingly, the defendant's offense level has been enhanced two levels pursuant to Section 3C1.1 of the United States Sentencing Guidelines.

Pham made no objection to the PSR generally or the obstruction enhancement specifically. For this reason, the district court was entitled to adopt the PSR's findings. *See* Fed. R. Crim. P. 32(b)(6)(D) ("Except for any unresolved objection . . . the court may, at the [sentencing] hearing, accept the presentence report as its findings of fact."). *See also United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998) (stating that a sentencing court may adopt the findings in the PSR without further inquiry unless the defendant makes an affirmative showing that the information in the PSR is inaccurate or unreliable); *United States v. Galbraith*, 200 F.3d 1006, 1013 (7th Cir. 2000) (stating that a sentencing court may adopt the PSR's findings absent an objection to the enhancement). Absent an objection from Pham, the district court was not required by *Dunnigan* to make additional findings of perjury. *See Dunnigan*, 507 U.S. at 95; *Galbraith*, 200 F.3d at 1014. Because there is no evidence suggesting that the presentence report misstated the trial testimony and the district court was authorized to adopt the presentence report, Pham cannot establish plain error.[2]

## III.

The district court properly removed prospective juror Bui from the venire when she stated that she was not certain that she could be impartial, and it properly enhanced Pham's base offense level for obstruction of justice. Accordingly, the judgment of the district court is

AFFIRMED.

---

[2]Pham contends that Bao's trial testimony was inherently incredible because Bao denied that he was testifying in order to obtain a lesser sentence for his own crimes. We shall not second-guess the district court's evaluation of the credibility of witnesses who testified at trial. *See United States v. Sun*, 278 F.3d 302, 314 (4th Cir. 2002) (affirming the district court's application of the obstruction enhancement where it determined that the defendant perjured himself at trial). In any event, Bao's testimony was corroborated by Ngo's testimony as well as a videotape of the events that transpired in the restaurant parking lot.